**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　Plaintiff,<br><br>v.<br><br>**QUIAN DEMARC YOUNGER,**<br><br>　　Defendant. | **Case No. 16-40012-02-DDC** |

## MEMORANDUM AND ORDER

This matter comes before the court on prisoner Qiuan Younger's Motion to Reduce Sentence (Doc. 92). Mr. Younger asserts he has served 51 months of his 76-month custody sentence. *Id.* at 2. He seeks a sentence reduction to time-served because of the COVID-19 pandemic. *Id.* at 1–4. The government has responded (Doc. 97) and Mr. Younger has filed a Reply (Doc. 98). The government then filed an Amended Response (Doc. 99) and Mr. Younger has responded with a Reply to the Amended Response (Doc. 100). For reasons explained below, the court denies Mr. Younger's motion.

**I.     Background**

In February 2016, a grand jury returned a two-count Indictment against Mr. Younger charging him with conspiracy to possess and possession with intent to distribute methamphetamine. These charges, if proved beyond a reasonable doubt, would violate 21 U.S.C. §§ 846 and 841(b)(1)(A). Doc. 1. About six months later, Mr. Younger entered a plea agreement with the government. Doc. 35. He pleaded guilty to Count 1, producing a conviction for conspiracy to possess with intent to distribute methamphetamine. *Id.* at 1–2. In November 2016, the court sentenced Mr. Younger to 76 months' imprisonment, followed by five years of

supervised release. Doc. 53 at 2–3. The court ordered this sentence to run concurrently with Mr. Younger's 18-month custody sentence for a supervised release violation in Case No. 16-50033-01-DDC. *See* Judgment at 2, *United States v. Younger*, No. 16-50033-01-DDC (D. Kan. Nov. 15, 2016), ECF No. 13.

Mr. Younger currently is incarcerated in Federal Correctional Institution Elkton in Ohio ("FCI Elkton"). Doc. 92 at 1. He asserts that nine inmates in this facility have died from the COVID-19 virus. *Id.* at 2. All Elkton FCI inmates have filed an emergency habeas action in the Northern District of Ohio seeking release from custody because of the spread of the virus within the facility. Doc. 92-1. Mr. Younger reports that he has experienced four "waves" of COVID-19 symptoms. Doc. 92 at 3. He asserts his health "recently [has] improved," but that each time his condition improves, it quickly deteriorates again. *Id.* Indeed, the government reports that since Mr. Younger filed the current motion, he has tested positive for the COVID-19 virus. Doc. 97 at 2. Mr. Younger's motion never asserts that he has an underlying physical or health condition that exacerbates the risks of the virus.

Mr. Younger requested compassionate release from FCI Elkton's warden on April 9, 2020. Doc. 92 at 4; Doc. 97-2. The warden denied his request on April 27, 2020. Doc. 92 at 4; Doc. 92-2. Mr. Younger now asks the court for compassionate release because he has served more than two-thirds of his custody sentence, he has a viable release plan, and compassionate release would permit him to live in a "COVID-free environment" where he could practice "social distancing" and seek appropriate medical care. *Id.* at 9–10. In its first response, the government argued that the court lacked jurisdiction to decide Mr. Younger's motion because he had not fully exhausted his administrative appeal rights. Doc. 97 at 2–7. But the government later filed an Amended Response, changing its position. The Amended Response reports that the

government now agrees that Mr. Younger has "satisfied the procedural requirements in this case." Doc. 99 at 2. It now is "solidly the official position" of the Department of Justice and the Bureau of Prisons that "a defendant can file a motion for compassionate release in district court 30 days after requesting relief from the [w]arden, even if the [w]arden denies the relief within the 30 days." *Id.* at 2 n.2. The government still opposes Mr. Younger's motion, contending he "has failed to establish extraordinary and compelling reasons for compassionate release." *Id.* at 2.

## II.     Jurisdiction

Binding authority from this Circuit establishes that a "'district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'" *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)). Title 18 U.S.C. § 3582(c), commonly called the compassionate release statute, permits a court to modify a term of imprisonment but only if certain exceptions apply. Previously, these exceptions required the Bureau of Prisons to bring a motion on a defendant's behalf. But in 2018, the First Step Act modified the compassionate release statute, authorizing a defendant to file his own motion for relief. First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194 (2018). This amendment authorized an inmate to make such a motion, but only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

District courts have reached different conclusions whether defendants must exhaust their administrative appeal rights before filing a motion for compassionate release in federal court. One line of cases has concluded that inmates may come to court any time after 30 days have

passed since they applied to the warden for compassionate release—even if the warden has denied their application within 30 days. *See., e.g.*, Mem. and Order, *United States v. Jackson*, No. 08-20150-02-JWL (D. Kan. May 29, 2020), ECF No. 16; *United States v. York*, No. 3:11-CR-76; 3:12-CR-154, 2019 WL 3241166, at *5 (E.D. Tenn. July 18, 2019).  A second line of cases has concluded that the compassionate release statute confers jurisdiction on district courts only when an inmate either has (1) exhausted all administrative appeals of the BOP's denial of a request to bring a motion on the defendant's behalf, or (2) filed a request for release with his warden and the warden has not responded within 30 days. *See, e.g.*, Order, *United States v. Vaughn*, No. 5:18-CR-40107-HLT (D. Kan. May 20, 2020), ECF No. 58; *United States v. Bolze*, No. 3:09-CR-93-TAV-CCS-1, 2020 WL 2521273 (E.D. Tenn. May 13, 2020).

Mr. Younger asserts that the court should follow the first line of cases.  That is, he argues the court can decide his motion because more than 30 days have passed since he asked his warden for compassionate release.  Doc. 92 at 5.  He contends that the fact the warden decided his request within 30 days of its submission is "of no consequence" because "[a] straightforward textual analysis of this provision gives the defendant the option of exhausting administrative remedies or going straight to court after 30 days have passed since the defendant made a request to the warden."  Doc 98 at 2.  At first, the government opposed this interpretation, arguing the court lacked jurisdiction because Mr. Younger had failed to exhaust his administrative appeal rights.  Doc. 97 at 2–7.  Now, however, the government agrees with Mr. Younger.  Doc. 99 at 2.  It concedes that waiting 30 days after requesting compassionate release from the warden is all that is required to satisfy § 3582(c)(1)(A)'s exhaustion requirement.  *Id.*

But this concession doesn't resolve the issue entirely, because the court still must decide whether it has subject matter jurisdiction to decide Mr. Younger's motion.  *See Gonzalez v.*

*Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented. Subject-matter jurisdiction can never be waived or forfeited." (internal citation omitted)). The Tenth Circuit hasn't addressed whether § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional. But two judges in this district have concluded that it is. *See, e.g.*, *United States v. Walker*, No. 13-10051-EFM, 2020 WL 2101369, at *2 (D. Kan. May 1, 2020) ("The administrative exhaustion requirement is jurisdictional and cannot be waived."); *United States v. Read-Forbes*, No. 12-20099-01-KHV, 2020 WL 1888856, at *3–4 (D. Kan. Apr. 16, 2020) (deciding that exhaustion requirement is jurisdictional based on text, context, and relevant historical treatment of § 3582(c)'s various subsections, and noting that "[i]n the context of motions under subsections of Section 3582(c) other than subsection (c)(1)(A), the Tenth Circuit has held that defendant's eligibility for a sentence reduction is jurisdictional").

The government's Amended Response concludes that failing to exhaust does not present an issue under this statute. In so concluding, it relies on a case decided after this court's decisions about the question: *United States v. Alam*, No. 20-1298, 2020 WL 2845694 (6th Cir. June 2, 2020). In *Alam*, the Sixth Circuit treated § 3582(c)(1)(A)'s exhaustion requirement as a "claim-processing rule," not a jurisdictional bar. *Id.* at 2. Judge Sutton's opinion explained that it is "'usually a mistake' to 'treat a statutory limit on our power as a statutory limit our subject-matter jurisdiction.'" *Id.* (quoting *United States v. Marshall*, 954 F.3d 823, 826 (6th Cir. 2020)). And, "[a] prescription limits our subject-matter jurisdiction only if 'the Legislature clearly states that [the] prescription counts as jurisdictional.'" *Id.* (quoting *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1850 (2019)). Judge Sutton reasoned that nothing in § 3582(c)(1)(A)'s exhaustion requirement "clearly limits" the court's jurisdiction. *Id.* Instead, the statute "merely imposes a

requirement on prisoners before they may move on their own behalf: They must 'fully exhaust[ ] all administrative rights' or else they must wait for 30 days after the warden's 'receipt of [their] request.'" *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)). *Alam* compared § 3582(c)(1)(A)'s exhaustion requirement to Title VII's non-jurisdictional requirement that claimants first must present their claims to the EEOC. *Id.* A Title VII claimant may file a complaint in federal court after the EEOC decides not to act, or after 180 days have passed. *Id.* But when a Title VII claimant fails to present his claims to the EEOC before filing suit in federal court, his omission provides the defending employer with a defense. *Id.* The omission doesn't deprive the federal court of subject matter jurisdiction, however. *Fort Bend Cty.*, 139 S. Ct. at 1851–52. *Alam* concluded that, "the provision [in § 3582(c)(1)(A)] looks like a claim-processing rule, and in operation acts like one." *Alam*, 2020 WL 2845694, at *2.

This distinction matters because, unlike a jurisdictional bar, "mandatory claim-processing rules bind the courts only when properly asserted and not forfeited." *Id.* at *2. "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at *3 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). In *Alam*, the government consistently had opposed the inmate's motion because the defendant had failed to wait the requisite 30 days after asking the warden for compassionate release before he filed his motion in federal court. *Id.* Because the government properly invoked this mandatory claim-processing rule as a defense, the Sixth Circuit enforced it. *Id.* And so, *Alam* dismissed the inmate's motion without prejudice because the inmate hadn't pursued administrative review of any adverse decision from the warden, nor had he waited 30 days after asking the warden for compassionate release. *Id.* at *4–5.

The Tenth Circuit has not yet decided whether § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional. In this circumstance, the court must predict how our Circuit would decide the question. *See Yang v. Midland Credit Mgmt., Inc.*, No. 15-2686-JAR, 2016 WL 393726, at *3 (D. Kan. Feb. 2, 2016) (predicting how Tenth Circuit would decide question that had produced split of authority). The court finds the Sixth Circuit's decision highly persuasive and the court predicts the Tenth Circuit would adopt its reasoning. Consistent with *Alam*, the court treats § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule.

This approach produces a different result than it did in *Alam*. Two key facts lead to a different result: (1) Mr. Younger waited 30 days after asking his warden for compassionate release to file his motion in federal court (Doc. 97-2), and (2) the government explicitly has waived enforcement of this claims-processing rule (Doc. 99 at 2). *See id.* at *3 (explaining that waiver and forfeiture are exceptions to mandatory claim-processing rules (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)). Mr. Younger thus has satisfied the exhaustion requirement of § 3582(c)(1)(A). And, even if he hasn't, the government explicitly has waived any objections to the exhaustion requirement. So, the court turns to the substance of his motion.

### III.  Discussion

#### A. The court exercises its discretion when deciding whether "extraordinary and compelling" reasons exist.

Section 3582(c)(1)(A) authorizes district courts to reduce a term of imprisonment if, "after considering the factors set forth in Section 3553(a) to the extent that they are applicable," the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement is found in U.S.S.G. § 1B1.13. *United States v. Beck*, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019). As pertinent here, this policy statement provides that the court may reduce a term of imprisonment, after considering the § 3553(a) factors, if (1) "[e]xtraordinary and compelling reasons warrant the reduction," (2) "[t]the defendant is not a danger to the safety of any other person or the community," and (3) "[t]he reduction is consistent with this policy statement."

Application Note 1 to § 1B1.13 provides that extraordinary and compelling reasons exist "under any of the [four] circumstances set forth below" in (A) through (D). *Id.* § 1B1.13 application notes 1. Subdivision (A) of Note 1 provides that the medical condition of a prisoner may qualify him for compassionate release, if (i) he is suffering from a terminal illness, or (ii) he is suffering from a serious physical or medical condition that "substantially diminishes" his ability to provide self-care within the prison and he is not expected to recover. *Id.* § 1B1.13 application notes 1(A). Subdivisions (B) and (C) apply to age and family circumstances not invoked here. Subdivision (D) supplies a "catchall" provision: it applies when "[a]s determined by the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 application note 1(D).

Mr. Younger plainly does not qualify under two of the four subdivisions in Note 1. He is not 65 years old (Subdivision (B)) and nothing suggests that the "family circumstances" addressed in Subdivision (C) apply. He also does not qualify under either of the two prongs described in Subdivision (A). Nothing suggests Mr. Younger "is suffering from a terminal

illness"—prong (i)—or, as prong (ii) requires, that he has contracted a "serious physical or medical condition" and he "is not expected to recover from" it.[1]  § 1B1.13 application note 1(A).

This leaves Subdivision (D).  This guidance advises that § 1B1.13 applies when "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" of application note 1.[2]

A few courts have ruled that only the BOP may invoke the "catchall" provision of subdivision (D).  *Id*.  *Jackson* summarized the reasoning of one such decision:

> Congress gave the Sentencing Commission the mandate to decide what constitutes an extraordinary and compelling reason; the [First Step Act] did not expand the criteria for finding such a reason, but merely allowed defendants to file motions; there can be no relief under this statute without consistency with the policy statement; and the policy statement does not presently provide for a court determination of other reasons.

*Jackson*, 2020 WL 2812764, at *3 (citing *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349 (S.D. Ala. Aug. 13, 2019)).  But an "overwhelming majority of courts" have rejected this approach.  *Id*.  Instead, they have "concluded that a court may make the necessary determination that other circumstances warrant relief under this statute."  *Id*. (citations omitted). In other words, "[w]hile the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."  *Beck*, 425 F. Supp. 3d at 579; *see also Jackson*, 2020 WL 2812764, at *3 (assuming, for purposes of deciding the motion, that court is not

---

[1]  Prong (ii) also applies to "serious functional or cognitive impairment" and "deteriorating physical or mental health because of the aging process."  § 1B1.13 application note (1)(A)(ii).  Mr. Younger's motion does not invoke these alternatives.

[2]  As explained above, in Section II, § 3582 used to permit the BOP—but not inmates—to file a compassionate release motion.  *See* First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194 (2018).  The Sentencing Commission hasn't revised Guidelines § 1B1.13 since that amendment and so the language used in this provision still requires a motion by BOP.  *See Jackson*, 2020 WL 2812764, at *3.  But the First Step Act obviates this requirement.

9

limited to circumstances set forth in subdivisions (A) through (C)); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020) ("In the wake of the First Step Act, numerous courts have recognized the court can determine whether extraordinary and compelling reasons exist to modify a sentence—and may do so under the 'catch all' provision . . . ."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (concluding that the correct interpretation of § 3582(c)(1)(A) is that when a defendant brings a motion for a sentence reduction under the amended provision, the court can determine whether extraordinary and compelling reasons—outside those delineated in subdivisions (A)–(C)—warrant granting relief).

The court joins this prevailing view, concluding that it may decide whether "extraordinary and compelling" reasons warrant compassionate release.

### B. Mr. Younger has not established that "extraordinary and compelling" reasons" warrant compassionate release.

Mr. Younger asserts that "extraordinary and compelling" reasons warrant compassionate release. FCI Elkton, where the BOP houses Mr. Younger, has had one of the worst—if not the worst—outbreaks of the COVID-19 virus in a federal prison. *See United States v. Coles*, No. 18-cr-20254, 2020 WL 1899562, at *3 (E.D. Mich. Apr. 17, 2020) (discussing conditions at FCI Elkton). Mr. Younger's papers assert that nine FCI Elkton inmates have died of the virus, accounting for 16% of all COVID-19 inmate deaths in BOP facilities. Doc. 92 at 8. Mr. Younger himself has contracted the virus. Doc. 95-1 at 2. He reports that he has experienced "waves" of symptoms and has lost about 20 pounds since becoming ill. Doc. 92 at 3. After he tested positive for the virus, he asserts BOP "quarantined" him in FCI Elkton's gymnasium with 46 other infected inmates, requiring them to sleep on mats on the floor. Doc. 98 at 15. One shower is available for all 47 men. *Id.*

10

All Elkton FCI inmates—including a "subclass of medically vulnerable inmates"—have filed a habeas corpus action in the Northern District of Ohio. They asked the Ohio court to order their release from FCI Elkton because of the virus's spread within their facility. Emergency Pet., *Wilson v. Williams*, No. 4:20-cv-00794-JG (N.D. Ohio), ECF No. 1. On April 22, 2020, the Ohio court granted the inmates' request for a preliminary injunction, in part. Order, *Wilson*, No. 4:20-cv-00794-JG, ECF No. 22. Citing the "losing battle" FCI Elkton officials were fighting against the virus, the court ordered BOP to identify members of the medically vulnerable subclass, and to "evaluate [the subclass members'] eligibility for transfer out of Elkton . . . ." *Id.* at 2, 20. It concluded that the inmate class had made a threshold showing of "deliberate indifference" by prison officials necessary to prevail on an Eighth Amendment claim. *Id.* at 16. On May 19, 2020, the Ohio court issued an Order enforcing its preliminary injunction, citing "limited efforts" to comply with the injunction, and "paltry grants of home confinement," among other reasons. Order at 2, 7, *Wilson*, No. 4:20-cv-00794-JG, ECF No. 85. On June 4, 2020, the United States Supreme Court stayed the district court's Order enforcing its preliminary injunction pending an appeal to the Sixth Circuit. Notice of Supreme Court Stay, *Wilson*, No. 4:20-cv-00794, ECF No. 111.

Mr. Younger never asserts that he is a member of the medically vulnerable subclass at issue in the Ohio class action. Instead, he seeks compassionate release here because of the conditions in the facility and his illness. Doc. 92 at 8. He also asserts that compassionate release is appropriate because he has served more than two-thirds of his custody sentence, his projected release date is less than 18 months away, and his projected transfer to the halfway house is about six months away. *Id.* at 10.

The government disagrees.  It asserts that Mr. Younger has not demonstrated "extraordinary and compelling reasons" warranting release.  Doc. 99 at 9.  Mr. Younger, the government argues, has not reported that he has a medical condition exacerbating the virus's effect on him.  Doc. 99 at 13.  The government also argues that Mr. Younger simply is seeking release because he has contracted COVID-19, and that reason alone is insufficient to justify compassionate release.

To be sure, it is regrettable that Mr. Younger is incarcerated during this pandemic.  It is equally regrettable that he has contracted the COVID-19 virus.  But the court isn't convinced that the combination of those two conditions qualifies him for release after serving about 65% of his sentence.  The court reaches this conclusion "after considering that factors set forth in [18 U.S.C.] § 3553(a) to the extent they are applicable"—the rubric § 3582(c)(1)(A) instructs the court to follow.  Four of those statutory sentencing factors are particularly germane here.  The next four paragraphs discuss them.

### *Nature and Circumstances of the Offense*

A Kansas Highway Patrol Trooper arrested Mr. Younger on the charges in his case after stopping a car in which Mr. Younger was a passenger.  During the stop, Mr. Younger provided the Trooper a Virginia driver's license with a different name.  Doc. 49 at 4 (PSR ¶ 11).  The Trooper searched the car and found "2.46 kilograms of methamphetamine actual." *Id.* at 5 (PSR ¶ 14).  A search warrant later authorized a search of the driver's phone. *Id.* (PSR ¶ 15).  Text messages on the phone indicated that Mr. Younger and the driver "were involved in illegal drug distribution." [3] *Id.*  To conclude with the obvious, Mr. Younger committed a serious felony offense.

---

[3] Mr. Younger did not object to any aspect of the report relied on in this Order.  *See* Doc. 49 at 20–21.

### *History and Characteristics of the Defendant*

This case's felony was not Mr. Younger's first serious crime. Six years before his arrest in this case, a Virginia federal court convicted him on a charge of making a false statement in acquisition of a firearm. Doc. 49 at 9 (PSR ¶ 37). He received a generous sentence—probation—but it was revoked because of drug use. *Id.* Three years before his arrest in this case, Mr. Younger was convicted in a Texas federal court for conspiracy to transport undocumented aliens and two charges of transporting such aliens. *Id.* at 10 (PSR ¶ 38). He was on supervised release for that conviction when arrested in Kansas for the offense in this case. *Id.* These conditions produced a substantial criminal history score—seven points for a category IV classification. *Id.* at 11 (PSR ¶ 42).

### *The Need for the Sentence to Reflect the Offense's Seriousness, to Provide Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct*

When the court sentenced Mr. Younger, it adhered to the statutory mandate that it impose a sentence that was "not greater than necessary." 18 U.S.C. § 3553(a). Mr. Younger received a sufficient but judicious sentence. Reducing that sentence by another one-third would produce a sentence that no longer reflects the seriousness of Mr. Younger's criminal conduct. Likewise, such a reduced sentence no longer would furnish adequate deterrence to criminal conduct or provide just punishment.

### *The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant*

Reducing Mr. Younger's sentence to the 51 months he has served would reduce it well below the applicable Guidelines range. No new factor justifies such a substantial disparity.[4]

---

[4] The court is mindful of the other factors identified by § 3553(a). They are not pertinent, however, to the current motion.

In sum, the pertinent sentencing factors in 18 U.S.C. § 3553(a) do not favor the reduction Mr. Younger's motion seeks. Indeed, the only thing that favors his request is the fact that he regrettably has contracted the COVID-19 virus while designated to a BOP facility hit hard by the virus. The court recognizes that this combination has increased the severity of the sentence beyond the 76 months originally imposed. *United States v. Mel*, No. CR TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("The fact that Mel has been incarcerated . . . during a serious outbreak of COVID-19 inside the facility sufficiently increased the severity of the sentence beyond what was originally anticipated . . . ."). But it has not increased its severity to the point where a 51-month custody sentence is sufficient. This is particularly true for Mr. Younger, who is 43 years old and, when sentenced in 2016, "enjoyed good health." Doc. 49 at 14 (PSR ¶ 59). He is a former college basketball player who, when sentenced, stood 6'1" tall and weighed 220 pounds. *Id.* (PSR ¶ 57).

The court is not prepared to accept that these two conditions—contracting the COVID-19 virus in a facility facing an outbreak—provide sufficient reasons for release under § 3582(c)(1)(A). The court thus denies Mr. Younger's Motion to Reduce Sentence (Doc. 92).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Younger's Motion to Reduce Sentence (Doc. 92) is denied.

**IT IS SO ORDERED.**

**Dated this 23rd day of June, 2020, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**

14